UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HIRECOUNSEL D.C., LLC,<br><br>            Plaintiff,<br>v.<br><br>KILIAN CONNOLLY,<br><br>            Defendant. | Civ. Action No. 20-3337 (EGS) |

**MEMORANDUM OPINION**

Plaintiff HIRECounsel D.C., LLC ("HIRECounsel") brings this lawsuit against Defendant Kilian Connolly ("Mr. Connolly") alleging: (1) two counts of breach of contract; and (2) violation of the District of Columbia Uniform Trade Secrets Act ("DCUTSA") arising out of his employment with his former employer HIRECounsel. Compl., ECF No. 1-1 at 8-10.[1] HIRECounsel filed its Complaint in the Superior Court of the District of Columbia, and Mr. Connolly removed the action to this court, alleging federal jurisdiction based on diversity of citizenship and the amount in controversy. *See* Notice of Removal, ECF No. 1 at 2.

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

1

Pending before the Court is Mr. Connolly's Motion to Dismiss. *See* Def.'s Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 7. Upon careful consideration of the motion, opposition, reply, the applicable law, and for the reasons explained below, Mr. Connolly's motion is **DENIED**.

## I. Background

### A. Factual

The Court assumes the following facts alleged in the complaint to be true for the purposes of deciding this motion and construes them in HIRECounsel's favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015). HIRECounsel is a "legal staffing and managed document review company" which "provides law firms and corporate legal departments permanent and temporary legal placements of attorneys and paralegals, as well as supplies personnel, technology, and staff to support managed document review for transactions and litigation matters." Compl., ECF No. 1-1 ¶ 4. On January 26, 2015, HIRECounsel hired Mr. Connolly as a Managing Director of Client Relations and entered into an Employment Agreement (the "Agreement") with him that included, among other things, certain post-employment restrictive covenants. *Id*. ¶¶ 6, 10-11. While Mr. Connolly was "based" in HIRECounsel's Boston office, "on several occasions in 2019, he was also directly responsible for customer engagements

pertaining to managed document review projects in Washington, DC for which he received compensation." *Id*. ¶ 8.

HIRECounsel alleges that during Mr. Connolly's employment, he had "access to information that is confidential and constitute trade secrets of [HIRECounsel]". *Id*. ¶ 10. This information included "detailed confidential information regarding [HIRECounsel] legal placements and prospects as well as the strengths and weaknesses of candidates for temporary and permanent legal placements at customers . . . confidential information concerning customers and [HIRECounsel's] relationship with them, pricing and other terms of contractual agreements with these customers, and profitability concerning services to its customers". *Id*. ¶ 9.

HIRECounsel alleges that Section 4 of the Agreement includes a non-disclosure covenant and defines "Confidential Information":

> (b) During and after EMPLOYEE'S employment with the COMPANY, the EMPLOYEE agrees that EMPLOYEE will not use, disclose, copy or retain or remove from the COMPANY'S premises any confidential or proprietary information or trade secrets, including but not limited to, lists and information pertaining to clients and client contacts, job applicants, referrals, and employees, and any other ideas, methods, procedures, techniques, written material, and other know- how, developed or used in connection with the COMPANY'S or any of its Affiliates' business belonging to the COMPANY or any of its Affiliates (collectively, "Confidential Information"),

3

> other than for use in connection with authorized work performed for the COMPANY or such Affiliates. Confidential Information shall also include, but is not limited to, ... financial and other information of the COMPANY and its Affiliates, not generally available to others.

*Id.* at 4.

Section 5 of the Agreement imposed non-competition restrictions, providing in relevant part that:

> (a) EMPLOYEE agrees that during the term of this Agreement and for a period of twelve (12) months following EMPLOYEE ceasing to be an employee of the COMPANY, EMPLOYEE will not, without the prior written consent of the COMPANY, either directly or indirectly, on EMPLOYEE'S own behalf or in the service or on behalf of others:
> ...
> (vii) directly or indirectly ... be employed by ... any Competing Business within seventy-five (75) miles of any office of the COMPANY or any of the COMPANY'S Affiliates, at which the EMPLOYEE is or was employed, performed services or engaged or assisted in the business or operations of the COMPNY or any of its Affiliates. ...

*Id.* Section 5(a)(i) defines "Competing Business" as a "business which is either engaged in permanent or temporary placement or the same or substantially the same business of HIRECounsel or its Affiliates." *Id.*

On August 7, 2020, Mr. Connolly resigned from his position with HIRECounsel, effective that day. *Id.* ¶ 13. Several weeks after his resignation, HIRECounsel alleges that it learned that

4

Mr. Connolly had joined Beacon Hill Staffing, LLC ("Beacon Hill") in its Boston office in its legal staffing specialty division as a Senior Account Executive. *Id*. ¶ 14. HIRECounsel alleges that Beacon Hill's legal specialty division provides legal placement and managed document review services similar to HIRECounsel and is a competitor of HIRECounsel. *Id*.

After Mr. Connolly's departure, HIRECounsel learned that he had, on July 28, 2020, "wrongfully forwarded from his work e-mail address to his personal e-mail a confidential internal report prepared by the Company's Vice-President of Sales regarding on- going placements, price mark-ups, and revenue projections by sales person." *Id*. ¶ 15. HIRECounsel alleges that this information was not available to the public and was only drawn from data in a password protected confidential database, and that Mr. Connolly was only given access by his direct superior during a virtual meeting when she shared her computer screen with the attendees of the virtual meeting. *Id.* HIRECounsel alleges that Mr. Connolly took "a screen shot with a snipping tool and then forward[ed] that image to his personal e-mail account." *Id.*

On September 23, 2020, HIRECounsel's counsel sent Mr. Connolly a cease and desist letter, alleging, in essence, that Mr. Connolly was in violation of the non-compete provision of the Agreement, and claiming that Mr. Connolly had sent

5

confidential information belonging to HIRECounsel to his personal e-mail address, in violation of Section 4(b) of the Agreement. *Id*. ¶ 16. Counsel to HIRECounsel also wrote to Beacon Hill, on or about September 29, 2020, claiming that Mr. Connolly's employment with Beacon Hill-and the alleged misappropriation of HIRECounsel's confidential information-violated the Agreement. *Id*. ¶ 17.

**B.   Procedural**

On November 24, 2020, Mr. Connolly filed his Motion to Dismiss. *See* Mot. to Dismiss, ECF No. 7. HIRECounsel filed its Opposition brief on December 8, 2020, *see* Opp'n, No. 8; and Mr. Connolly filed his Reply brief on December 15, 2020, *see* Reply, ECF No. 10. The Motion is ripe and ready for the Court's adjudication.

**II.  Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal quotation marks omitted).

6

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks omitted). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted). "In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Schl.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

**III. Analysis**

    **A.    Counts I and II State a Claim for Breach of Contract with Regard to Certain Provisions of the Agreement**

In Count I, HIRECounsel alleges that Mr. Connolly violated the non-Competition provision in Section 5 of the Agreement as a result of his employment with Beacon Hill's legal staffing specialty division. Compl., ECF No. 1-1 at 8. In Count II, HIRECounsel alleges that Mr. Connolly violated Section 4(b) of the Agreement by taking a screen shot with a snipping tool of a confidential internal report and then forwarding that image to his personal e-mail account. *Id.* at 9.

Under District of Columbia law, to state a claim for breach of contract, HIRECounsel must allege: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. *Tsintolas Realty Co., v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

        **1.    Count I States a Claim for Breach of Contract With Regard to the Non-Compete Provisions in Section 5 of the Employment Agreement**

Mr. Connolly argues that HIRECounsel fails to state a claim for breach of contract on the ground that the non-compete provision in the Agreement is unenforceable because: (1) it is not reasonable; and (2) "it is far broader than necessary for the protection of any possible business interest at stake for

8

HIRECounsel." Mot. to Dismiss, ECF No. 7 at 8. "Under District of Columbia law, a non-compete agreement's terms are enforceable if the restrictions further a legitimate business interest and are reasonable in duration and geographic scope." *Robert Half Int'l v. Billingham*, 315 F. Supp. 3d 419, 430 (D.D.C. 2018) (citations omitted). Here, HIRECounsel has alleged that Section 5(a)(vii) of the Agreement obligates Mr. Connolly to not be employed by a competing business within 75 miles of the HIRECounsel Boston office for one year.[2] Compl., ECF No. 1-1 ¶ 11. The Agreement defines a "competing business" as a "business which is either engaged permanent or temporary placement or the same or substantially business." *Id*. Mr. Connolly argues that the provision is overbroad because it would prohibit him "from being employed in any business engaged in staffing, without limitation to industry, and even in a role unrelated to the kind of work [he] performed for HIRECounsel." Mot. to Dismiss, ECF No. 7 at 18. HIRECounsel responds—and the Court agrees—that a "competing business" is a "competing legal staffing business." Opp'n, ECF No. 8 at 13. And to the extent Mr. Connolly argues that the provision would prevent him from doing any kind of work for a competing legal staffing business, that is not the case before the Court. Here, HIRECounsel has alleged that it hired

---

[2] Mr. Connolly does not contest the one-year time restriction. *See generally* Mot. to Dismiss, ECF No. 7.

Mr. Connolly as a Managing Director of Client Relations and that after resigning from his position with HIRECounsel, he joined a competitor of HIRECounsel as a Senior Account Executive in its legal staffing specialty division. Compl., ECF No. 1-1 ¶¶ 6, 13, 14. Accordingly, "[t]he [C]ourt need not indulge in this thought experiment." *Robert Half*, 315 F. Supp. 3d at 431.

Mr. Connolly also argues that because staffing businesses do not rely on customer goodwill and confidential information, HIRECounsel has no legitimate business interest in the restrictive covenant. Mot. to Dismiss, ECF No. 7 at 17. HIRECounsel has alleged that it provided Mr. Connolly with access to its confidential and trade secret information including "detailed confidential information regarding [its] legal placements and prospects as well as the strengths and weaknesses of candidates for temporary and permanent legal placements at customers." Compl., ECF No 1-1 ¶ 9. HIRECounsel has further alleged that the information "also included confidential information concerning customers and [its] relationships with them, pricing and other terms of contractual agreements with these customers; and profitability concerning services to its customers." *Id*. With these allegations, HIRECounsel has sufficiently alleged its legitimate business interest in maintaining customer goodwill and protecting confidential information. *Cf. Mercer Mgmt. Consulting v. Wlide,*

10

920 F. Supp. 219, 237 (D.D.C. 1996) (finding a non-compete agreement to be reasonable and enforceable in view of the substantial investment Mercer made in its employees, the vital importance of its client base to its business, and the close contacts established between its consultants and its client base).

Mr. Connolly also argues that the 75-mile restriction is geographically overbroad and unreasonable.[3] Mot. to Dismiss, ECF No. 7 at 20. The Court disagrees. Courts applying District of Columbia law have repeatedly upheld the enforceability of similar geographic scope restrictions. *E.g.*, *Robert Half*, 315 F. Supp. 3d at 430 (50-mile restriction); *Morgan Stanley DW Inc.*, 150 F. Supp. 2d 67, 74 (D.D.C. 2001) (100-mile restriction).

Finally, Mr. Connolly argues that even if the provision is enforceable, HIRECounsel has "fail[ed] to allege the essential element of damages" because it "does not allege that it has lost any customer, job placement, or any other business . . . ." Mot. to Dismiss, ECF No. 7 at 21. Under District of Columbia law, however, a plaintiff is not required to allege the damages caused by a breach of contract to survive a Rule 12(b)(6) motion

---

[3] To the extent Mr. Connolly argues that the provision could also restrict his employment within a 75-mile radius of Washington, D.C., again, that is not the case before the Court. Here, the complaint alleges that Mr. Connolly went to work for its competitor Beacon Hill in its Boston Office. Compl., ECF No. 1-1 ¶ 14.

to dismiss. At this stage, "'it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach.'" *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 207 (D.D.C. 2016) (quoting *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015).

For these reasons, HIRECounsel has sufficiently stated a claim for breach of contract and Mr. Connolly's Motion to Dismiss is **DENIED** as to Count I of the Complaint.

### 2. Count II States a Claim for Breach of Contract With Regard to Section 4(b) of the Employment Agreement

Mr. Connolly contends that HIRECounsel has failed to plausibly allege a violation of Section 4(b) of the Agreement because HIRECounsel failed to allege that: (1) he removed the screen shot for any unauthorized reason; (2) he disclosed the information to anyone outside of HIRECounsel; (3) he has used it since leaving HIRECounsel; (4) the information would be valuable to HIRECounsel's competitors; (5) facts describing what the image contained; and (6) why the information was subject to the Agreement's definition of Confidential Information. Mot. to Dismiss, ECF No. 7 at 22.

Mr. Connolly's arguments are unpersuasive. First, HIRECounsel has adequately described what the image contained and has adequately alleged that the information in the screen shot falls within Section 4(b) of the Agreement. Section 4(b) of

12

the Agreement defines "Confidential Information" as "including but not limited to, lists and information pertaining to clients and client contacts, job applicants, referrals, and employees, and any other ideas, methods, procedures, techniques, written material, and other know-how, developed or used in connection with the COMPANY'S or any of its Affiliates' business belonging to the COMPANY or any of its Affiliates," Compl., ECF No. 1-1 ¶ 10; and as "include[ing], but not [] limited to, ... financial and other information of the COMPANY and its Affiliates, not generally available to others," *id*. HIRECounsel alleges that the screen shot contained "a confidential internal report . .. regarding on-going placements, price mark-ups, and revenue projections." *Id*. ¶ 15. HIRECounsel further alleges that "[t]his information was not available to the public," was "drawn from data in a password protected confidential database," and was "marked 'confidential and proprietary.'" *Id*.

Second, HIRECounsel has adequately alleged that Mr. Connolly violated Section 4(b) of the Agreement when he emailed a screen shot of the report to his personal email address. Section 4(b) of the Agreement provides that, among other things, Mr. Connolly was prohibited, during his employment with HIRECounsel from copying, retaining, or removing from HIRECounsel's premises any confidential information. Compl., ECF No. 1-1 ¶ 10. HIRECounsel alleges that Mr. Connolly took "a

screen shot [of the report] with a snipping tool and then forward[ed] that image to his personal email account." *Id*. ¶ 15. Based on the relevant provision in the Agreement, Mr. Connolly's contentions that HIRECounsel needs to allege that: (1) he removed the screen shot for any unauthorized reason; (2) he disclosed the information to anyone outside of HIRECounsel; (3) he has used it since leaving HIRECounsel; and (4) the information would be valuable to HIRECounsel's competitors are entirely without merit.

Finally, Mr. Connolly again argues that HIRECounsel has failed to allege facts demonstrating that it suffered any damages as a result of the alleged breach. Mot. to Dismiss, ECF No. 7 at 23-24. However, and an explained *supra*, under District of Columbia law, a plaintiff is not required to allege the damages caused by a breach of contract to survive a Rule 12(b)(6) motion to dismiss. At this stage, "'it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach.'" *Jacobson*, 168 F. Supp. 3d at 207 (*quoting* Francis, 110 A.3d at 620).

For these reasons, HIRECounsel has sufficiently stated a claim for breach of contract as to Section 4(b) of the Agreement and Mr. Connolly's Motion to Dismiss is **DENIED** as to Count II of the Complaint.

**B.   Count III States a Claim for Violation of the DCUTSA**

In Count III, HIRECounsel alleges that Mr. Connolly violated the DCUTSA when he allegedly sent to his personal e-mail of a "screen shot" "image" from the July 2020 virtual meeting. Compl., ECF No. 1-1 at 9.

To establish a trade secret misappropriation claim under the DCUTSA, HIRECounsel must allege: (1) the existence of a trade secret; and (2) acquisition of the trade secret by improper means, or improper use or disclosure by one under a duty not to disclose. *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 77 (D.D.C. 2007) (citing D.C. Code § 36-401). The "threshold inquiry" in every trade secret case is "whether or not there [is] a trade secret to be misappropriated." *Catalyst & Chemical & Chemistry Services, Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 8 (D.D.C. 2004). "For information to constitute a trade secret under the DCUTSA, (1) the information must be secret; (2) its value must derive from its secrecy; and (3) its owner must use reasonable efforts to safeguard its secrecy." *DSMC, Inc.*, 479 F. Supp. 2d at 77-78 (internal quotation marks and citation omitted). "Whether a particular piece of information is a trade secret is generally a question of fact." *Id*.

The DCUTSA defines a "trade secret" as "information, including a formula, pattern, compilation, program, device,

method, technique, or process, that: (A) [d]erives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and (B) [i]s the subject of reasonable efforts to maintain its secrecy." D.C. Code § 36-401(4). Information, which is generally known within industry, even if it is not generally known to public, cannot constitute "trade secret" under District of Columbia law. *Catalyst & Chemical Services, Inc.*, 350 F. Supp. 2d at 8.

Mr. Connolly first argues that the Complaint fails to allege facts which describe the actual information in the screen shot. Mot. to Dismiss, ECF No. 7 at 25. However, and as discussed *supra*, HIRECounsel has sufficiently described the information Mr. Connolly allegedly retained in the form of a screen shot of the report.

Second, Mr. Connolly argues that HIRECounsel has failed to explain "how it derives economic value from the secrecy of such information, or how such information is not readily ascertainable 'by another who can obtain economic value from its disclosure or use.'" *Id*. (quoting D.C. Code § 36-401(4)). However, "[w]hether a particular piece of information is a trade secret is generally a question of fact . . . after full presentation of the evidence from each side." *Id. DSMC, Inc.*,

16

479 F. Supp. 2d at 77-79 (internal quotation marks and citation omitted). As this juncture, HIRECounsel has sufficiently alleged that the confidential information is a trade secret by alleging that: (1) the report contained information regarding "on-going placements, price mark-ups, and revenue projections by sales persons"; (2) it was not publicly available; (3) was "drawn from data in a password protected confidential database; and (4) was marked "confidential and proprietary." Compl., ECF No. 1-1 ¶ 15.

Third, Mr. Connolly argues that HIRECounsel fails to allege that he misappropriated the alleged trade secret because: (1) he did not access the information without permission; and (2) HIRECounsel does not allege that he has disclosed the information to anyone outside of HIRECounsel nor used it for any purpose other than for his work at HIRECounsel. Mot. to Dismiss, ECF No. 7 at 26. Relevant to the allegations here, DCUTSA defines "misappropriation" as "disclosure or use of a trade secret without express or implied consent by a person who: (i) used improper means to acquire knowledge of the trade secret." DC Code 36-401(2)(A). "'Improper means' means theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other means." DC Code 36-401(1). HIRECounsel argues that the "improper means" was "taking a screen shot of the confidential report with a snipping tool and then forwarding that image to his personal

17

email account for his use unrelated to his employment with [HIRECounsel]." Opp'n, ECF No. 8 at 22 (citing Compl., ECF No. 1-1 ¶ 34. HIRECounsel further argues that Mr. Connolly misappropriated the information because his action amounted to theft and was in violation of his Employment Agreement. *Id*. The Court is persuaded that, at this juncture, HIRECounsel has sufficiently alleged that Mr. Connolly misappropriated the alleged trade secret. He acquired it for use unrelated to his employment with HIRECounsel and by improper means when he emailed the information to his personal email address 10 days before he resigned from his position with HIRECounsel and soon thereafter began working with one of HIRECounse's direct competitors. *See E.I. DuPont deNemours & Co. v. Christopher,* 431 F.2d 1012, 1016 (5th Cir. 1970) ("improper means" has been defined as those means that "fall below the generally accepted standards of commercial morality and reasonable conduct"). Mr. Connolly's argument that HIRECounsel's claim fails because it does not allege that he used the trade secret is without merit based on the pain language of the statute. D.C. Code § 46-401 ("acquisition of the trade secret by improper means, *or* improper use or disclosure by one under a duty not to disclose") (emphasis added).

Finally, Mr. Connolly argues that HIRECounsel's demand for exemplary damages are baseless. Mot. to Dismiss, ECF No. 7 at

27. However, none of the persuasive authority cited by Mr. Connolly supports dismissal of such a demand at this juncture in the proceedings.

For these reasons, HIRECounsel has sufficiently stated a claim for a violation of the DCUTSA and Mr. Connolly's Motion to Dismiss is **DENIED** as to Count III of the Complaint.

**IV. Conclusion**

For the reasons explained above, Mr. Connolly's Motion to Dismiss is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:   Emmet G. Sullivan**
**          United States District Judge**
**          December 20, 2021**