UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HIRECOUNSEL DC, LLC,

    *Plaintiff*,

v.

KILIAN CONNOLLY,

    *Defendant*.

Civil Action No. 20-3337 (LLA)

### MEMORANDUM OPINION

Plaintiff HIRECounsel D.C., LLC ("HIRECounsel") brings this action against Kilian Connolly alleging breach of contract and violation of the District of Columbia Uniform Trade Secrets Act ("DCUTSA"), D.C. Code § 36-401 *et seq*. ECF No. 1-1. Pending before the court is Mr. Connolly's motion for summary judgment. ECF No. 24. For the reasons explained below, the court will grant the motion.

    **I.**    **Factual Background and Procedural History**

    **A.**    **Factual Background**

HIRECounsel is a company in the legal staffing industry, working to recruit and match legal professionals with various employers. ECF No. 27-3, at 8; ECF No. 39, at 2. Starting in 2015, HIRECounsel employed Mr. Connolly in its Boston, Massachusetts office in the role of Managing Director of Client Relations. ECF No. 24-1, at 2; ECF No. 39, at 2. Upon his hiring, Mr. Connolly signed an Employment Agreement detailing the conditions of his employment. ECF No. 27-3, at 11-35; ECF No. 39, at 11-34. The contract specifies that it "shall be governed by and construed in accordance with the laws of the District of Columbia." ECF No. 27-3, at 23; ECF No. 39, at 22. Two provisions of the agreement are at issue here.

First, the agreement contains a limitation on the sharing of confidential information and trade secrets. The relevant section states

> During and after EMPLOYEE's employment with the COMPANY, the EMPLOYEE agrees that EMPLOYEE will not use, disclose, copy or retain or remove from the COMPANY's premises any confidential or proprietary information or trade secrets, including, but not limited to, lists and information pertaining to clients and client contacts, job applicants, referrals, and employees, and all other ideas, methods, procedures, techniques, written material, and other know-how, developed or used in connection with the COMPANY's or any of its Affiliates' business belonging to the COMPANY or any of its Affiliates (collectively, "Confidential Information"), other than for use in connection with authorized work performed for the COMPANY or such Affiliates. Confidential Information shall also include, but not be limited to, the names, addresses, telephone numbers, qualifications, education, accomplishments, experience, availability, and résumés of all persons who have applied to or been recruited by the COMPANY or any of its Affiliates for employment or placement and job order specifications and the particular characteristics and requirements of persons generally hired by a client, as well as specific job listings, mailing lists, computer runoffs, financial and other information of the COMPANY and its Affiliates, not generally available to others. Confidential Information shall also include all information contained or stored in the confidential databases of the COMPANY and its Affiliates containing Confidential Information or other information of the COMPANY or its Affiliates (the "Confidential Database").

ECF No. 27-3, at 15-16; ECF No. 39, at 14-15.

Second, the agreement contains a non-compete provision, limiting Mr. Connolly's ability to contribute to a competing business. ECF No. 27-3, at 17-20; ECF No. 39, at 16-19. In relevant part, the non-complete provision states that

> (a) EMPLOYEE agrees that during the term of this Agreement and for a period of twelve (12) months following EMPLOYEE ceasing to be an employee of the COMPANY, EMPLOYEE will not, without the prior written consent of the COMPANY, either directly or indirectly, on EMPLOYEE'S own behalf or in the service or on behalf of others: . . .

> (vii) directly or indirectly . . . be employed by . . . any Competing Business within seventy-five (75) miles of any office of the COMPANY or any of the COMPANY's Affiliates, at which the EMPLOYEE is or was employed, performed services or engaged or assisted in the business or operations of the COMPANY or any of its Affiliates[.]

ECF No. 27-3, at 17-18; ECF No. 39, at 16-17. The non-compete provision additionally prohibits other forms of competition, such as contacting HIRECounsel's clients or potential clients and utilizing any of HIRECounsel's proprietary software. ECF No. 27-3, at 18; ECF No. 39, at 17. It further specifies that "[i]n the event of a breach . . . the running of the [12-month] period of the restriction shall be tolled." ECF No. 27-3, at 19; ECF No. 39, at 18.

The non-compete provision also contains a liquidated damages clause. ECF No. 27-3, at 20; ECF No. 39, at 19. It states

> (e) The EMPLOYEE recognizes that the COMPANY has and will be making a significant investment of resources, financial and otherwise, into the success of the COMPANY and recognizes and agrees that the value of Confidential Information is, and the damage to the COMPANY caused by the EMPLOYEE's violation of any of the covenants and agreements contained in [the non-compete provision] will be, significant and difficult to ascertain. It is therefore agreed that the COMPANY shall be entitled as payment from the EMPLOYEE and any person or entity involved in the violation of [the non-compete provision] as a fair and reasonable estimate of the liquidated damages and not as a penalty the greater of:
>
>> (i) the sum of forty thousand dollars ($40,000); and
>>
>> (ii) for each calendar week or part thereof that such violation continues, a sum equivalent to the greater of
>>
>>> (A) one fifty-second (1/52) of the EMPLOYEE's total compensation from the COMPANY during the twelve (12) months before the initial date of the violation and
>>>
>>> (B) the gross commissions attributable to the EMPLOYEE's direct or indirect efforts during such calendar week of the violation.

3

ECF No. 27-3, at 20; ECF No. 39, at 19. The provision additionally directs that liquidated damages "are not exclusive, but are cumulative and [HIRECounsel] may pursue any and all other relief available to it in law or equity." ECF No. 27-3, at 20; ECF No. 39, at 19.

Mr. Connolly states that he did not negotiate the non-compete provision or the liquidated damages clause. ECF No. 35, at 1-4; ECF No. 27-2, at 1-2, 4. In her initial deposition, HIRECounsel's corporate representative stated that she was unaware of any negotiations or discussions related to those provisions of the employment agreement. ECF No. 39, at 42-43; ECF No. 27-2, at 4. Further, she did not know how the liquidated damages clause came to be included in the agreement or how the particular formulation of liquidated damages had been determined. ECF No. 27-2, at 4; ECF No. 39, at 42-43.

Mr. Connolly resigned from HIRECounsel on August 7, 2020, and began working for a competitor, Beacon Hill Staffing Group, LLC ("Beacon Hill"), a few days later. ECF No. 35-1, at 2; ECF No. 27-3, at 49, 53-54. Mr. Connolly testified at his deposition that since moving to Beacon Hill, he has worked with some of HIRECounsel's clients. ECF No. 40, at 69-70.

### B. Procedural History

HIRECounsel filed this lawsuit against Mr. Connolly in October 2020, bringing claims for: (1) breach of the non-compete provision of his employment agreement; (2) breach of the confidentiality provision of his employment agreement; and (3) misappropriation of trade secrets under the DCUTSA, D.C. Code § 36-401 *et seq*. ECF No. 1-1. HIRECounsel seeks $261,610.72 in liquidated damages, increasing every week by $2,335.81 due to the non-compete provision's tolling clause. ECF No. 39, at 75; ECF No. 27-2, at 7. Mr. Connolly filed a motion to dismiss, ECF No. 7, which the court denied, ECF No. 12.

During discovery, HIRECounsel requested that Beacon Hill (who is represented by the same attorneys as Mr. Connolly), produce Mr. Connolly's commission statements for the time

period in which Mr. Connolly had worked at Beacon Hill.  ECF No. 27-1, at 13-14; ECF No. 40, at 20-21.  The commission statements would list all the customers and clients that Mr. Connolly had worked with, as well as any profits gained from such transactions.  ECF No. 27-1, at 13-14; ECF No. 40, at 20.  Beacon Hill did not produce these documents.  ECF No. 27-1, at 14; ECF No. 40, at 20-21.  HIRECounsel claims that Beacon Hill "represented that they would produce the commission statements" later in discovery.  ECF No. 27-1, at 14.  Beacon Hill states that it never agreed to produce the records because "doing so would reveal all the customers and clients [Mr.] Connolly made placements with at Beacon Hill."  ECF No. 33, at 17.  HIRECounsel never moved to compel production.  *See* ECF No. 27-1, at 14.

Mr. Connolly now moves for summary judgment, arguing that HIRECounsel is unable to prove damages—an essential element of all three counts.  ECF No. 24, at 1.  The matter is fully briefed.  ECF Nos. 24, 27, 33.

## II.   Legal Standards

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" after considering the parties filings and record in the light most favorable to the non-moving party.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact" that would impact the outcome of the litigation.  *Anderson*, 477 U.S. at 247-48.

The non-moving party must do more than rely on "mere allegations or denials," rather, it "must set forth specific facts showing . . . a genuine issue for trial" by pointing to specific parts of the record.  *Id.* at 256.  If a party does not "establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial" the court may consider the fact undisputed for purposes of the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(e). A court reviewing a motion for summary judgment must still "determine for itself whether the record and any undisputed material facts justify granting summary judgment," even if a motion is unopposed or a party neglects to address a particular argument. *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016) (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 95 (D.C. Cir. 2015)).

"Because the enforceability of a liquidated damages clause is determined by reference to the 'circumstances and expectations of the parties existing at the time of [the contract's] execution,' the issue is often resolved at summary judgment or after trial, when evidence of those 'circumstances and expectations' is before the court." *Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 27 (D.D.C. 2013) (quoting *Davy v. Crawford*, 147 F.2d 574, 575 (D.C. 1945)).

### III.     Discussion

Mr. Connolly argues that HIRECounsel is unable to carry its burden on all three counts because it cannot prove damages, either actual or liquidated. ECF No. 24, at 1. Each count—two for breach of Connolly's employment contract, and one for violation of the DCUTSA—requires damages as an element of the claim. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (explaining that damages are required in a breach of contract claim); *Catalyst Chem. Servs., Inc. v. Glob. Ground Support*, 350 F. Supp. 2d 1, 7-8 (D.D.C. 2004) (explaining damages are required for a DCUTSA claim). If HIRECounsel cannot prove actual or liquidated damages, its claims fail because "[i]t is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Tsintolas Realty Co.*, 984 A.2d at 187 (quoting *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir. 1997)). The court concludes

that HIRECounsel has not met its burden to prove actual or liquidated damages; accordingly, Mr. Connolly is entitled to summary judgment.

### A. The Liquidated Damages Clause – Count I

By its plain language, the liquidated damages clause applies only to HIRECounsel's claim for breach of the non-compete provision, not to its claims of breach of the confidentiality provision or violation of the DCUTSA. ECF No. 27-3, at 20; ECF No. 39, at 19. Neither party disputes this. ECF No. 24-1, at 8; *see* ECF No. 27-1, at 9-10.

A liquidated damages provision in a contract allows the parties to stipulate "the amount of damages recoverable in the event of a breach." 24 Richard A. Lord, *Williston on Contracts* § 65:1 (4th ed. 2024). In this jurisdiction, a "liquidated damages clause is valid unless it is found to constitute a penalty." *Burns v. Hanover Ins. Co.*, 454 A.2d 325, 327 (D.C. 1982). The party challenging enforceability bears the burden of showing the provision is a penalty. *S. Brooke Purll, Inc. v. Vailes*, 850 A.2d 1135, 1138 (D.C. 2004). The "common law views liquidated damages clauses with a gimlet eye," particularly "where there is a disparity of bargaining power and one party unilaterally imposes [the provision]." *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723-24 (D.C. 2003). "To distinguish between enforceable liquidated damages provisions and unenforceable penalties, [the court] considers the reasonableness of the terms of the liquidated damages clause, as compensation for breach, viewed as of the time and under the circumstances when it was agreed." *Proulx v. 1400 Pa. Ave., SE, LLC*, 199 A.3d 667, 673 (D.C. 2019).

A liquidated damages clause will be enforced if it was crafted as "reasonable protection against uncertain future litigation," but it may be an unenforceable penalty if it "appears" to have been "designed to make the default of the party against whom it runs more profitable . . . than performance would be." *Id.* at 674 (quoting *Davy*, 147 F.2d at 575). "[A]greements to pay fixed sums plainly without reasonable relation to any probable damage which may follow a breach will

7

not be enforced," *id.*, especially when "the fixed sum greatly exceeds the actual damages likely to be inflicted by a minor breach," *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 557 (D.C. 2016) (quoting *Dist. Cablevision*, 828 A.2d at 724).

The court concludes that the liquidated damages clause at issue here is an unenforceable penalty. First, the court adopts the common-law suspicions of the liquidated damages clause because the employment agreement was not the result of negotiations between sophisticated parties, but rather imposed by the employer unto Mr. Connolly, a prospective employee with no legal training. *Dist. Cablevision*, 828 A.2d at 723-24; *cf. The Cuneo L. Grp., P.C. v. Joseph*, 669 F. Supp. 2d 99, 117 (D.D.C. 2009) (finding no "unfair bargaining" where the agreement was between a law firm and a lawyer, among other things).

More importantly, the court centers its analysis on the context and time that the contract was entered into. *Proulx*, 199 A.3d at 675. "Under D.C. law, 'the written language of a contract governs the parties' rights unless it is not susceptible to clear meaning.'" *Red Sage Ltd. P'ship v. Despa Deutsche Sparkassen Immobilien-Anlage-Gasellschaft mbH*, 254 F.3d 1120, 1125 (D.C. Cir. 2001) (quoting *Adler v. Abramson*, 728 A.2d 86, 88 (D.C.1999)). The liquidated damages clause in HIRECounsel's employment agreement with Mr. Connolly provides that any violation of the non-compete provision entitles HIRECounsel to the highest of three options: (1) a flat sum of $40,000; (2) an amount equal to Mr. Connolly's previous HIRECounsel wages for the length in weeks that breach occurs; or (3) the commissions attributable to Mr. Connolly's direct or indirect action for his new employer, for each week of breach. ECF No. 27-3, at 20; ECF No. 39, at 19. Although the provision states that its purpose is to specify damages because actual damages will be "significant and difficult to ascertain," such a statement is not dispositive, and the court must

consider the substance of the provision itself.  ECF No. 27-3, at 20; ECF No. 39, at 19; *see Proulx*, 199 A.3d at 673-76.

The court concludes that this liquidated damages clause lacks a "reasonable relation to any probable damage which may follow a breach." *Proulx*, 199 A.3d at 674 (quoting *Davy*, 147 F.2d at 575).  Typically, damages for a breach of a non-compete provision are comprised of the former employer's lost profits.  *Mercer Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219, 238 (D.D.C. 1996).  In this circumstance, this means that the liquidated damages clause must have some "reasonable relation" to HIRECounsel's lost profits due to Mr. Connolly's breach.  Of the three measures provided in the liquidated damages provision, none has a reasonable relationship to lost profit.  The $40,000 figure is not anchored to anything.  It is seemingly arbitrary, and as such, has no relationship to a potential breach—it merely serves as a "bonus" in the event of breach.  Next, the provision disgorging Mr. Connolly's prior wages bears no relationship to HIRECounsel's lost profits upon violation of the non-compete provision.  Mr. Connolly notes that profits in the staffing industry are "razor thin," and it is common sense that an employee's salary may lack connection to the amount of profit they bring to the company.  ECF No. 24-1, at 10.  A highly paid employee could be ineffective, whereas a low-paid employee could bring in a windfall.  Measuring damages based on an employee's salary is thus disconnected from an estimate for damages.  Finally, the measure of commissions attributable to Mr. Connolly's direct and indirect efforts with his new employers is similarly unmoored from potential damages.  Mr. Connolly notes that this measure could include commissions not only from his direct actions, but also indirect commissions earned by other employees that he supervises.  ECF No. 24-1, at 12-13.  This again has no relationship to HIRECounsel's lost profits.  Mr. Connolly could earn commissions at

9

another employer based on a separate pool of clients without any impact to HIRECounsel's business.

Further, the contract provides that liquidated damages are not exclusive, but rather cumulative with common-law remedies such as traditional damages. ECF No. 27-3, at 20; ECF No. 39, at 19. This means that damages will always be at least $40,000 higher than actual damages. The disgorgement and commission-based measures also have the potential to award a sum "greatly exceed[ing] the actual damages likely to be inflicted by a minor breach." *Falconi-Sachs*, 142 A.3d at 557 (quoting *Dist. Cablevision*, 828 A.2d at 724) Just take this case as an example: HIRECounsel seeks actual damages, plus an additional $261,610.72 in liquidated damages, increasing every week indefinitely by $2,335.81. This would exceed actual damages, potentially by a large amount, and that would have been obvious to the parties at the time of the contract's formation.

The liquidated damages clause also treats all breaches with the same level of severity, "even though it is apparent that all are not of the same gravity"—another indication that the clause is an unenforceable penalty. *Id.* Such was the case in *Falconi-Sachs*, where a late fee for rent was "the same regardless of how late the payment [was] made." *Id.* There, a tenant one day late on rent owed the same penalty as a tenant two weeks late, despite the difference in harm to the landlord. *Id.* So too here. Whether the noncompete is violated by an employee moving to a competing employer while poaching multiple clients, or by sending a holiday card to one of the many job candidates in HIRECounsel's database, the penalty would be the same. HIRECounsel's Corporate Representative admitted as much in her deposition. ECF No. 39, at 39. This outcome strongly indicates that the clause is an unenforceable penalty.

More fundamentally, HIRECounsel has simply failed to carry its summary judgment burden. At the summary judgment stage, the non-moving party must do more than rely on "mere allegations or denials," rather, it must "set forth specific facts showing . . . a genuine issue for trial" by pointing to specific parts of the record. *Anderson*, 477 U.S. at 248. HIRECounsel does not explain with specificity how the clause is reasonable, instead relying on conclusory statements that the clause must be enforceable. ECF No. 27-1, at 11-12. Mr. Connolly points to specific support in the record indicating that the HIRECounsel sales manager responsible for hiring Mr. Connolly was unaware of the clause and that, during her deposition, HIRECounsel's corporate representative did not know how the particular formula for the provision was calculated. ECF No. 39, at 43-44, 48-49, 84.

Comparison clarifies this reasoning. In *Proulx*, the court upheld a liquidated damages clause "which called for forfeiture of the $150,000 deposit in the event that [buyer] did not close on the purchase" of a property. 199 A.3d at 675. The buyer argued that this amount was too high; because, had the sale gone through, the seller would only have made $85,000 in profit. *Id.* Additionally, the seller had agreed to a price $50,000 over the market value for the property and argued that the actual damages could not exceed that amount. *Id.* Thus, the buyer's central argument was that the liquidated damages clause was a penalty because it was "more profitable . . . to default than to go through with the sale." *Id.* The court disagreed, holding that the clause was enforceable because the $150,000 amount was entirely reasonable when viewed at the time of the contract's execution. *Id.* at 675-76. This was supported by evidence, including expert testimony explaining the volatility of the housing market and specific reasoning offered by the seller about the potential costs incurred by carrying the property for a longer period of time. *Id.* at 676. Similarly, in *Order of AHEPA v. Travel Consultants, Inc.*, 367 A.2d 119 (D.C. 1976),

11

the court upheld a liquidated damages provision in a contract for travel agency-related services between two sophisticated parties, a nonprofit and a business, and relied on testimony that illustrated how difficult it would have been to estimate damages based on the cost of air fare many months in the future, the number of trips that would have been taken, and more. *Id.* at 123.

Here, in the face of Mr. Connolly's motion for summary judgment, HIRECounsel offers no specific support from the record to explain how the liquidated damages clause is reasonable in relation to its actual damages. *See* ECF No. 27-1, at 7-13. Instead, it points to the language in the contract stating that damages will be "significant and difficult to ascertain," which, as explained above, is not independently dispositive. *Id.* at 9-10. HIRECounsel further argues that Mr. Connolly "bases [his] argument on nothing because he has not quantified the value of his work in violation of the noncompete." *Id.* at 11. But this misunderstands the legal standard. It does not matter what the damages from the actual breach are, but rather what the parties believed they *could be* at the time of contracting. *Proulx*, 199 A.3d at 673. On that point, HIRECounsel has nothing to offer. It points to no figures about the economics of the staffing industry, the profit it anticipated it could draw from Mr. Connolly's services, or any other concrete figures. *See id.* at 675-76.

Seemingly recognizing its shortfall, HIRECounsel seeks to add a new affidavit to the record, after the close of discovery, which includes at least some specific testimony from its Chief Revenue Officer, Andreana Nelson Amaya, related to the circumstances at the time of contracting. ECF No. 27-3, at 68-72. Specifically, she states that "[a]t the time that HIRECounsel and Connolly contracted, it was impossible to know with any certainty what its damages would be in the event Connolly breached." *Id.* at 69. Ms. Amaya states that HIRECounsel could not know how many of its customers Mr. Connolly would work with after leaving or how much revenue he would generate for his new employer. *Id.* Assuming that the court can rely on this affidavit—and

12

Mr. Connolly offers many reasons why it cannot, ECF No. 33, at 3-8—the same problems exist with this testimony as described above: there is no grounding information from which the court can determine whether the specific provisions are reasonable. It is just another conclusory statement that damages would have been difficult to estimate.

In sum, the liquidated damages provision is an unenforceable penalty. HIRECounsel can proceed on this claim only if it can establish actual damages. ECF No. 27-3, at 20; ECF No. 39, at 19 (employment contract provision clarifying that liquidated damages "are not exclusive, but are cumulative and [HIRECounsel] may pursue any and all other relief available to it in law or equity" including damages).

### B.  Actual Damages – All Counts

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see* Fed. R. Civ. P. 56(a). To withstand summary judgment on a breach of contract claim, the plaintiff must produce some evidence of discernable consequences stemming from the purported breach. *See Chambers v. Cobb*, 193 A.3d 123, 127-28 (D.C. 2018). Mere speculation of generalized harm is insufficient. *See id.*; *Wood v. Day*, 859 F.2d 1490, 1493 (D.C. Cir. 1988) ("[W]hile damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages." (quoting *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C. 1982)).

Because the liquidated damages provision is unenforceable, HIRECounsel must establish actual damages to move forward with any of its three claims. *Tsintolas Realty Co.*, 984 A.2d at 187. Mr. Connolly contends that HIRECounsel cannot carry its burden because it has provided

no evidence supporting actual damages and, as a consequence, there is no genuine dispute of material fact and HIRECounsel's claims fail as a matter of law. ECF No. 24, at 1. The court agrees.

First, there is no dispute of material fact. Mr. Connolly points to specific evidence in the record showing HIRECounsel suffered no damages. HIRECounsel's Corporate Representative stated in a deposition that HIRECounsel had "no information" about whether Mr. Connolly had "caused harm" to it, ECF No. 39, at 47; and another HIRECounsel employee stated that other than having "one less salesperson" who was "good for the culture," he was "not aware of any other damage" caused by Mr. Connolly's departure. ECF No. 24-3, at 85. HIRECounsel points to no disputed facts in response. Instead, it points to an undisputed fact—that Mr. Connolly has worked with some of its clients in his new role at Beacon Hill. ECF No. 27-1, at 15; ECF No. 33, at 14-15. This fact is not material because it is unclear how it causes harm to HIRECounsel. None of HIRECounsel's clients are exclusive to it, so an overlap of clients does not necessarily mean a loss of business or profits for HIRECounsel. ECF No. 40, at 18-19. HIRECounsel's Corporate Representative said that she "did not know" whether Mr. Connolly's involvement with HIRECounsel's clients had impacted the business. ECF No. 39, at 40. The situation could be different if HIRECounsel had pointed to testimony that a client had stopped working with it, or that the staffing industry generally operates in a zero-sum setting in which one employer succeeds to the detriment of another. But it did not. Accordingly, the fact has no material impact on damages.

Again, a comparison sharpens this shortcoming. In *Hawthorne v. Rushmore Loan Management Services, LLC*, No. 20-CV-393, 2023 WL 6388928 (D.D.C. Sept. 29, 2023), the defendant sought summary judgment on the grounds that the plaintiff could not establish damages

for its claim under the Fair Credit Reporting Act. *Id.* at *5. The defendant suggested that the only record evidence of harm was a letter from a bank denying the plaintiff's application for a credit card due to an inaccurate report by the defendant. *Id.* The court noted that such evidence alone might not suffice but explained that the plaintiff had provided additional evidence including testimony that multiple of her loan applications had been denied because of the defendant's inaccurate reporting. *Id.* at *5-6. While noting that even that was "not the strongest evidence," the court found it "sufficient to defeat a motion for summary judgment." *Id.* at *6. In contrast, HIRECounsel points to just one vague, poorly developed fact in the record: that Mr. Connolly worked with some of its clients in his new role. ECF No. 27-1, at 15. It is less material than the letter in *Hawthorne*, and for the reasons described above, fails to create a genuine dispute of material fact precluding summary judgment. *See Doe v. De Amigos, LLC*, 987 F. Supp. 2d 12, 18 (D.D.C. 2013) (granting the defendant's motion for summary judgment because the plaintiff had failed to present evidence sufficient to create a genuine dispute of material fact concerning an award of punitive damages).

In its opposition, HIRECounsel raises a discovery issue, alleging that Beacon Hill failed to comply with a subpoena in which it sought Mr. Connolly's commission statements, which it contends would have shown actual damages by listing the specific clients with whom he worked, and the profit derived from them. ECF No. 27-1, at 13-14. HIRECounsel states that it did not move to compel the statements because Mr. Connolly's counsel assured it that the documents would be produced. *Id.* at 14. Then, after discovery closed, Beacon Hill refused to produce the documents. *Id.* HIRECounsel describes this as a "gotcha" tactic, essentially allowing Mr. Connolly to "hide behind" Beacon Hill's actions. *Id.* at 15.

The court will not credit these accusations because they were raised in a procedurally improper manner and they are unsupported by evidence. HIRECounsel did not attach an affidavit supporting its assertion that Beacon Hill misled it during discovery. "The mere averment that the crucial information is within the exclusive knowledge of the opponent without stating that further discovery is desired and will be productive has been held insufficient to prevent the entry of summary judgment." 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2741 (4th ed. 2024). In contrast, Mr. Connolly presents a different version of events supported by sworn declarations. His and Beacon Hill's counsel provided an affidavit explaining that Beacon Hill never agreed to produce the commission statements and instead provided Mr. Connolly's wage statements. ECF No. 40, at 20-23.

In any event, the court need not determine what exactly occurred, because HIRECounsel merely states these allegations without anchoring them in a request for additional discovery or any other type of relief. It does not invoke Federal Rule of Civil Procedure 56(d), which provides relief to a nonmovant when facts are unavailable to it, and the court cannot construe its brief in opposition to summary judgment as such because HIRECounsel did not comport with the procedures called for in that rule. Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."). Further, the court provided the parties with an opportunity to supplement their filings, and HIRECounsel elected not to request additional discovery or an opportunity to bolster its opposition. *See* Minute Order, Jan. 9, 2024; ECF No. 38.

At bottom, HIRECounsel fails to identify a dispute of material fact with respect to actual damages, and it cannot proceed with its claim in the absence of a showing of harm. *Tsintolas Realty Co.*, 984 A.2d at 187 (explaining that damages are required in a breach of contract claim); *Catalyst Chem. Servs., Inc*, 350 F. Supp. 2d at 8 (explaining damages are required for a DCUTSA claim). For these reasons, Mr. Connolly is entitled to summary judgment on HIRECounsel's breach of contract and DCUSTA claims.

### IV. Conclusion

For the foregoing reasons, the court will grant Defendant's motion for summary judgment, ECF No. 24. A separate order will issue.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: July 31, 2024